UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JAMES EARL JONES**, <br><br>Petitioner, <br><br> v. <br><br> **UNITED STATES OF AMERICA**, <br><br>Respondent. | 2:17-CR-20608-TGB-DRG-1 <br><br> HON. TERRENCE G. BERG <br><br><br> **ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE (ECF NO. 35)** |

On September 24, 2020, James Earl Jones filed an ex parte motion requesting counsel to assist in drafting a compassionate release motion. ECF No. 32. After reviewing Mr. Jones's motion, this Court appointed Mr. Jones counsel who submitted a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 33, 35. Having considered the materials submitted by both parties as well as publicly available data, the Court now **GRANTS** the motion for compassionate release.

## I. BACKGROUND

Mr. Jones is a 65-year-old man who, prior to his incarceration, had been diagnosed with Stage III chronic kidney disease. Additionally, Mr. Jones had suffered from a closed head injury with concussion, post-concussion syndrome, post-traumatic cephalgia, cervical radiculopathy, lumbosacral fibromyositis, and arthralgia of the knees and hip. ECF No.

35, PageID.173. He also was diagnosed with "low-average intellectual functioning and a neurophysiological examination found significant psychological and cognitive impairment." ECF No. 35, PageID.174. After he was incarcerated, Mr. Jones was diagnosed with hypertension, COPD, hyperlipidemia, for which he takes medication, pre-diabetes, enlarged prostate, and polyps in his colon. Mr. Jones was also prescribed psychotropic medications to address his mental health diagnoses. In May of 2019, Mr. Jones also suffered a stroke. ECF No. 35, PageID.174.

## II. DISCUSSION

In determining whether Mr. Jones is eligible for compassionate release under 18 U.S.C. § 3582(c), the Court must determine (1) whether he has exhausted his administrative remedies, (2) whether there are "extraordinary and compelling reasons" that warrant his release, and (3) whether his release would be consistent with the factors set forth in § 3553(a). *See, e.g., United States v. Agomuoh*, 461 F. Supp. 3d 626, 629-30 (E.D. Mich. 2020); *United States v. Mitchell*, 472 F. Supp. 3d 403, 406 (E.D. Mich. 2020); *United States v. Elias*, 984 F.3d 516, 519-20 (6th Cir. 2021) (clarifying that the factors in U.S.S.G. § 1B1.13 are no longer a required component of the compassionate release motion analysis for motions directly filed by defendants).

The Government concedes that Mr. Jones has met the first (administrative exhaustion) and second (extraordinary and compelling reasons) prong of the test. However, the Government argues the Court

should deny Petitioner's motion because the third prong, analysis of the §3553(a) factors, do not support his release.

### a. Extraordinary and Compelling Reasons

Notwithstanding the Government's concession that Mr. Jones's medical conditions, specifically his chronic kidney disease and chronic obstructive pulmonary disease ("COPD"), a chronic inflammatory lung disease, qualify as "extraordinary and compelling reasons" for release, it is appropriate to summarize Mr. Jones's medical complications because their severity is a factor in the Court's analysis. ECF No. 39, PageID.287. In addition to his age, Mr. Jones has a litany of medical problems that make him more vulnerable to serious illness or death if he should contract Covid-19 while in custody. Prior to incarceration, Mr. Jones was diagnosed with Stage III chronic kidney disease, post-concussion syndrome, post-traumatic cephalgia, cervical radiculopathy, lumbosacral fibromyositis, and arthralgia of the knees and hips. ECF No. 35, PageID.173. Additionally, Mr. Jones was diagnosed "with low-average intellectual functioning and neurophysiological examination found significant psychological and cognitive impairment." ECF No. 35, PageID.174.

Mr. Jones's health problems continued after he was incarcerated. He was diagnosed with hypertension, COPD, hyperlipidemia (high cholesterol), pre-diabetes, enlarged prostrate, and polyps in his colon. ECF No. 35, PageID.174. He takes a variety of medications (Losartan,

3

Nifedipine, etc.) to address these conditions as well as psychotropic medications to address his mental health issues. ECF No. 35, PageID.174. Mr. Jones also suffered a stroke in May of 2019. ECF No. 35, PageID.174. In sum, due to both his age and extensive medical history, there is no doubt that Mr. Jones's petition raises legitimate concerns about his health and safety.

### b. Factors Set Forth in §3553(a)

Next, the Court turns to the third prong of the analysis: whether the release of Mr. Jones would be consistent with the factors outlined in §3553(a). The Government takes the position that the §3553(a) factors do not support Mr. Jones's release, pointing to: (1) the severity of the underlying crime, (2) the comparatively short time that Mr. Jones has served, "less than 30% of his 90-month sentence, which itself was a significant downward variance" (ECF No. 39, PageID.288), and (3) the facts that the facility in which Mr. Jones is serving his sentence currently has zero cases of Covid-19 amongst inmates and the Bureau of Prisons ("BOP") is beginning to make vaccines available to all of its inmates and staff.

The Sixth Circuit has made clear that "[d]istrict courts should consider all relevant §3553(a) factors before rendering a compassionate release decision." Jones, 980 F.3d at 1114 (internal citations omitted). While a district court need not articulate the analysis of every single factor, the record as a whole should demonstrate that relevant factors

were considered. *Id*. These factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," (3) "to afford adequate deterrence to criminal conduct; (4) "to protect the public from further crimes of the defendant," and (5) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a).

There is no question that the nature and circumstances of Mr. Jones's offense were particularly serious. He was sentenced to 90 months of incarceration followed by five years of supervised release for the distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2). ECF No. 39, PageID.303. A forensic review of the Mr. Jones's computers, hard drives, and other media found thousands of images and hundreds of videos containing child pornography. ECF No. 26, PageID.126. Further, the materials found on this media involved particularly graphic images. *See* ECF No. 39, PageID.287. Without qualification, the Court notes that distribution of child pornography is an especially harmful crime that involves the abuse and exploitation of society's most vulnerable victims. The Court agrees with the Government's contention that the severity of the offense weighs against granting compassionate release.

5

Mr. Jones has also only served approximately 32 months of his 90 month sentence or just over 30 percent of his sentence. *See* ECF No. 39, PageID.287, n.1. The lack of time served cuts against release as Mr. Jones's projected release date according to the BOP's calculations is not until May 28, 2025. ECF No. 39, PageID.290. *See United States v. Kincaid*, 805 F. App'x 395-96 (6th Cir. 2020). Additionally, during his period of incarceration Mr. Jones has not yet completed the BOP's sex offender treatment. ECF No. 39, PageID.297. These factors weigh against release when considering whether the time Mr. Jones has served is sufficient to promote respect for the law and reflect the seriousness of the offense.

While the severity of the crime and amount of time served weigh against release, the Court's inquiry does not end here. Rather, the Court is obligated to evaluate and weigh the other facts before it—including those that weigh in favor of release. First, the Court considers the history and characteristics of the defendant. Mr. Jones has a history of mental health problems, most notably depression, and mental disability including "low average intellectual functioning and borderline to average memory functioning." ECF No. 24, PageID.90. Additionally, a psychological examination of Mr. Jones found that an alcohol addiction had a "significant and detrimental effect on [his] cognitive abilities." ECF No. 24, PageID.92. Importantly, the doctor who evaluated Mr. Jones also

concluded "that Mr. Jones was not prone to violence and has a low risk of dangerousness and is amendable to treatment." ECF No. 24, PageID.92.

The Court also notes that Mr. Jones does not have a significant criminal history. As acknowledged by the Government and taken into consideration by this Court during sentencing, Mr. Jones had "no significant prior arrests or convictions." ECF No. 26, PageID.128 ("In fact, his longest prison sentence was thirty days."). Mr. Jones also took full responsibility for his actions and cooperated with law enforcement and the government—including turning himself in to BOP authorities. ECF No. 26, PageID.128 (Government sentencing memorandum recommending a downward variance due to Mr. Jones's "lack of criminal history and immediate acceptance of responsibility"). The doctor who performed a mental assessment of Mr. Jones also noted that Mr. Jones "did not make excuses for his conduct, never justified himself and took responsibility for his actions." ECF No. 24, PageID.92. While out on bond, Mr. Jones remained in compliance with his bond conditions which included participation in mental health treatment and expressed hope that the Court would allow him to continue treatment while he was serving his sentence. ECF No. 35, PageID.173; ECF No. 24, PageID.23.

There is also evidence that Mr. Jones has engaged in positive rehabilitation programming while incarcerated. Since his incarceration, Mr. Jones has not received a single disciplinary ticket. ECF No. 35, PageID.195. In addition to the mental health treatment Mr. Jones

received while on bond, he completed a drug treatment course since being incarcerated. ECF No. 35, PageID.195. While the Government correctly notes that Mr. Jones has not completed BOP sex offender treatment, he did undergo "mental health treatment to address the issues that led to the offense conduct" prior to his incarceration and his proposed release plan includes continued treatment. ECF No. 35, PageID.195. The doctor who provided an evaluation of Mr. Jones also noted that "Mr. Jones has been significantly impacted by this prosecution, and believes that this has had a significant deterrent effect on Mr. Jones." ECF No. 24, PageID.93. Accordingly, the record contains evidence showing that the sentence already served has promoted respect for the law and provided adequate deterrence.

Next, despite the Government's contention that the BOP has taken precautions to mitigate risk within its facilities (see ECF No. 39, PageID.291-92), the Government's position is not reassuring given the historically high rates of infection at FCI Elkton. Over time, the facility has had 763 inmates who have been infected with COVID-19, and 9 deaths, although it currently has 0 active cases. *See Dashboards of BOP COVID-19 Cases*, OFFICE OF THE INSPECTOR GENERAL, https://perma.cc/83TS-WCPE. As of September 18, 2021, FCI Elkton had one staff member with an active case.

By Mr. Jones's own account, he is unable to properly "social distance, self-isolate, or sanitize." ECF No. 35, PageID.192. These claims

8

regarding the nature of the conditions at FCI Elkton are consistent with the allegations outlined in a class action filed in the Northern District of Ohio. *See Wilson v. Williams*, 4:20-cv-00794-JG, ECF No. 1-1 (N.D. Ohio, Apr. 13, 2020). The complaint in *Wilson* outlines a variety of allegations regarding the conditions of FCI Elkton and the impact of the spread of Covid-19 in the facility. For example, the complaint alleges that social distancing is "impossible," units which contain showers and sink shared "by more than a hundred people," lack of access to hygiene products, and noted that in response to the conditions at the prison the Ohio governor sent 26 members of the National Guard to assist with incarcerated individuals who had fallen ill. While at the time of this motion the case is ongoing, Judge James Gwin has already placed the facility under continued monitoring and instructed FCI Elkton to "identify potential members of the medically-vulnerable subclass," which the court defined as "prisoners at Elkton Federal Correctional Institution who, because of age or preexisting medical condition, are at a high risk of serious illness or death in the midst of the severe COVID-19 outbreak there." *Id.* at ECF No. 32. It is significant that Mr. Jones appears on this list of inmates considered to be the most medically vulnerable at FCI Elkton. ECF No. 37-2. His motion further argues that his placement on this list indicates that the "BOP identifies Mr. Jones as a low risk of recidivism." ECF No. 40, PageID.319.

And while the Government contends that the BOP generally is beginning the process of vaccinations, there is no evidence that Mr. Jones has had access to the vaccine. As this Court has previously asserted, the BOP has an obligation to supply vaccines to those incarcerated as soon as possible, and it remains the obligation of the BOP to ensure that all inmates are housed in conditions that genuinely reduce the risk of exposure to the virus—including by following and rigorously implementing CDC guidelines.

There is no question that there are competing considerations at stake in a decision like this. The underlying crime of child pornography is an unquestionably harmful offense and its depravity cannot be overstated. And the fact that Mr. Jones has yet to undergo BOP sex offender treatment during his incarceration is troubling. But regardless of the severity of his crime, the Court's original sentence was never intended to be a death sentence and Mr. Jones's medical conditions and age appear to present unusually high risks that if he contracts the virus, he is likely to experience more severe illness or even death.  Indeed, the potential danger posed by Mr. Jones's heath issues and age is a pressing concern—one that BOP itself has acknowledged. These concerns are exacerbated by the alleged conditions at FCI Elkton and the 9 deaths which have already occurred there. Mr. Jones's acceptance of responsibility, lack of criminal record, willingness to participate in treatment also support release. On balance, in considering of all of the

§3553(a) factors, the Court concludes that they support release. Accordingly, the Court will grant Mr. Jones's motion for compassionate release.

While the Court shares the Government's concerns regarding the fact that Mr. Jones has as of yet served only about one-third of his sentence, and that his continued incarceration would obviously protect the public from any further crimes, there are conditions that can be imposed to address these issues. As counsel for Mr. Jones points out, several courts have "fashioned supervised release conditions designed to mitigate any concerns for dangerousness or risk to the community" for individuals who have been convicted of such internet-based offenses. ECF No. 40, PageID.317. While this Court does not have the statutory authority to order that Mr. Jones's current sentence be modified to home confinement, as the Bureau of Prisons maintains the sole authority to provide such relief (*see Miller v. United States,* 453 F.Supp.3d 1062, 1065 (E.D. Mich. Apr. 9, 2020); *United States v. Mattice*, No. 20-3668, 2020 WL 7587155, at *2 (6th Cir. Oct. 7, 2020)), courts may order release and impose a term of supervised release that requires an initial term of home detention. *See United States v. Amarrah*, 458 F.Supp.3d 611 (E.D. Mich. May 7, 2020); *United States v. Spencer*, No. 20-3721, 2020 WL 5498932, at *2 (6th Cir. Sept. 2, 2020) ("But if the district court reduces a defendant's sentence under § 3582(c)(1)(A) to time served, it can impose a term of supervised release equal to the unserved time and order, as a

11

condition of that supervised release, that the defendant be confined to his home.").

With this in mind, an additional term of supervised release with a targeted set of restrictive conditions will be imposed. Accordingly, Mr. Jones's sentence will be reduced to time served, to be followed by an increased term of supervised release of seven-years, the first two of which shall be served in home confinement. The remaining five-year term of supervised release (the same that was imposed in his original sentence) will not include home-confinement. Mental health and sex offender treatment on a consistent and sustained basis will be required throughout the period of supervised release, as directed by the Probation Department. Mr. Jones will also be subject to the strictest computer and Internet usage conditions and monitoring protocols available, including being subject to searches and seizures on reasonable suspicion, also at the direction of the Probation Department.

Neither the full completion of Mr. Jones's original custodial sentence nor any act of remorse or contrition on his part can undo the harm and pain caused by his offenses—but nor would his possible death due to an infectious virus to which he is particularly vulnerable, it would only add another condemnable quantum of human loss to the equation. As recognized by the Sixth Circuit:
> By the end of 2020, one in every five persons incarcerated in the United States had tested positive for COVID-19. At least 275,000 imprisoned persons across the country have been infected; more

than 1,700 have died. A court's refusal to reduce an incarcerated person's sentence could result in death.

*United States v. Mathews*, __ F. App'x __, No. 20-1635, 2021 WL 855834, at *1 (6th Cir. Mar. 8, 2021). The Court is persuaded that the risk to Mr. Jones under current circumstances is unusually pronounced. Therefore, a reduction in sentence is appropriate.

## CONCLUSION

For the reasons set forth above, it is **ORDERED** that Defendant's motion for compassionate release (ECF No. 35) is **GRANTED**.

It is **FURTHER ORDERED** that:

- Defendant's sentence of imprisonment is reduced to time served;

- Defendant shall be released immediately after holding him for a 14-day quarantine period at FCI Elkton;

- Defendant's sentence of supervised release is amended to a period of seven years, the first two years of which shall be served on home confinement;

- During the period of supervised release, Defendant shall comply will all of the conditions originally imposed, and the Court emphasizes that Defendant shall participate in mental health and sex offender treatment on a consistent and sustained basis according to the direction of the Probation Department;

Defendant shall also be subject to the strictest computer and Internet usage conditions and monitoring protocols available, including being subject to searches and seizures on reasonable suspicion, also at the direction of the Probation Department.

**IT IS SO ORDERED.**

Dated: September 20, 2021      s/Terrence G. Berg
                               TERRENCE G. BERG
                               UNITED STATES DISTRICT JUDGE